AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

**LODGED**
CLERK, U.S. DISTRICT COURT

7/18/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MMC _____ DEPUTY

for the

Central District of California



**FILED**
CLERK, U.S. DISTRICT COURT

7/18/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ CGM _____ DEPUTY

United States of America

v.

STEVEN MICHAEL MARTINEZ,

Defendant

Case No.   2:25-MJ-04474-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of July 16, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of child pornography |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*/s/ Victoria Scott*
_____
*Complainant's signature*

Victoria Scott, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    07/18/2025                    _____
                                        *Judge's signature*

City and state:  Los Angeles, California         Hon. A. Joel Richlin, U.S. Magistrate Judge
                                                  *Printed name and title*

AUSA:   Lindsay M. Bailey x6875

## AFFIDAVIT

I, Victoria J. Scott, being duly sworn, declare and state as follows:

## I.  INTRODUCTION

1.    I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), in Los Angeles, California, and I have been so employed since June 2019.  I am currently assigned to HSI Ventura, which is tasked with investigating federal crimes involving child exploitation, child pornography, cybercrimes, immigration crimes, human rights violations and human smuggling, smuggling of narcotics, weapons and other types of contraband, financial crimes, and various other violations of immigration and customs laws.  I am a graduate of the Federal Law Enforcement Training Center ("FLETC") HSI Special Agent Training program, where I received formalized instruction about the nature of child exploitation and child pornography, and how to investigate these cases.

2.    I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am authorized by law to conduct investigations and to make arrests for felony offenses.

3.    Since graduating from FLETC, I have received additional training regarding investigating child exploitation and child pornography and have had the opportunity to observe and review various examples of child pornography in all forms of media including computer media. In addition, I have participated

in the execution of several search warrants that involved child exploitation and/or child pornography offenses. Assisting with these search warrants has given me an understanding of how people involved with offenses relating to the sexual exploitation of children use the Internet and other digital platforms to further those offenses. Finally, I have spoken to other experienced law enforcement officers concerning the results of their own investigations into child sex trafficking cases and cases in which adults entice children to engage in sex acts in exchange for items of value, and the methods and practices of people who commit such crimes.

## II. PURPOSE OF AFFIDAVIT

4.  This affidavit is made in support of a criminal complaint against STEVEN MICHAEL MARTINEZ ("MARTINEZ") for a violation of 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography).

5.  This affidavit is also made in support of an application for a warrant to search the following digital devices, seized from MARTINEZ's person and residence during the execution of a state search warrant on July 16, 2025, and which are currently in the custody of Culver City Police Department, as described more fully in Attachment A:

a.  An Apple iPhone with a gray Otter case and displaying the photo of a child on the lock screen, which was found on MARTINEZ's person at the time of his arrest on July 16, 2025 ("SUBJECT DEVICE 1");

      b.    A Dell Inspiron 660 desktop computer bearing Service Tag number 2RM6NV1 ("SUBJECT DEVICE 2");

      c.    A Toshiba Public Storage external drive bearing serial number 14VDT0J4TV8H ("SUBJECT DEVICE 3");

      d.    A Dell Inspiron laptop model 14 bearing serial number JBS55Y3 ("SUBJECT DEVICE 4");

      e.    A black Apple iPhone with a blue case, model number A1387 ("SUBJECT DEVICE 5");

      f.    An Apple iPad with a black case bearing serial number F6MCWTAAMF3Q ("SUBJECT DEVICE 6");

      g.    A black Avolusion external drive bearing serial number Z1S2009914 ("SUBJECT DEVICE 7");

      h.    A black Samsung tablet with black leather case bearing serial number NRF2FA0VH8YF ("SUBJECT DEVICE 8"); and

      i.    A Toshiba external drive in a brown box bearing serial number X4LQP176TVEH ("SUBJECT DEVICE 9") (collectively, the "SUBJECT DEVICES").

    6.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and search warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance

and in part only, and all dates and times are on or about those indicated.

### III. **PROPERTY TO BE SEARCHED**

7.    The property to be searched are the **SUBJECT DEVICES** described in Attachment A, which is incorporated herein by reference.

### IV. **ITEMS TO BE SEIZED**

8.    The items to be seized are the evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252A(a)(5)(B) (possession of child pornography), 2251(a) (production of child pornography), 2422(b) (enticement), 2252A(a)(2)(A) (receipt and distribution of child pornography), and 2251A(b) (obtaining custody of minor with intent to produce child pornography) (the "Subject Offenses"), as described in Attachment B, which is incorporated by reference.

### V. **SUMMARY OF PROBABLE CAUSE**

12.    Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

a.    Beginning no later than in or around February 2025, MARTINEZ solicited child pornography from a seven-year-old female minor ("MV1").  At the time, MARTINEZ was employed by the Culver City Parks, Recreation and Community Services Department ("PRCS") as an after-school care employee for the Culver City Afterschool Recreation Program ("CCARP"), and MV1 was enrolled in CCARP.  MARTINEZ was employed by CCARP as a caretaker of young children from June 8, 2020, to June 26, 2025.

13.  On July 7, 2025, Culver City Police Department ("CCPD") received a report from the mother of MV1 that, while at CCARP, MARTINEZ coerced MV1 to show him her genitals, that he exposed his genitals to MV1, and that he gave MV1 hugs and kisses on her hand.

14.  According to the July 14, 2025, forensic interview of MV1, on multiple occasions at CCARP, MARTINEZ showed MV1 his genitals and asked to see her genitals, which she showed him. MARTINEZ gave MV1 his phone to take into the bathroom and take photographs of her vaginal area and bare breasts.  MARTINEZ also kissed MV1 on the cheek and had MV1 kiss him on the cheek and neck.  MARTINEZ told her that they could be together forever, discussed sex, and brought a vibrating sex toy to show MV1, which he demonstrated on her hand.

15.  On July 16, 2025, CCPD arrested MARTINEZ for violating California Penal Code 288(a) (lewd acts on a child) and, pursuant to a search warrant, conducted a search of his residence.  During the arrest, MARTINEZ possessed **SUBJECT DEVICE 1**, an Apple iPhone with a photograph on the lock screen of MV1 exposing her bare breasts.  CCPD seized **SUBJECT DEVICE 1** from his person and the remaining **SUBJECT DEVICES** from MARTINEZ's bedroom during while executing the search warrant. **SUBJECT DEVICE 2** displayed, as an apparently saved background, a closeup photo of a prepubescent female exposing her vagina.  **SUBJECT DEVICE 3** was plugged into **SUBJECT DEVICE 2** and displayed a folder labeled "Francesca Collection" that contained apparent files with thumbnails indicating approximately 100 images of an

apparent prepubescent female in lewd and sexual poses, including images exposing the prepubescent female's vagina and breasts.

## VI. BACKGROUND ON CHILD EXPLOITATION OFFENSES, COMPUTERS, THE INTERNET, AND DEFINITION OF TERMS

9.  In this affidavit, the terms "minor," "sexually explicit conduct," "visual depiction," "producing," and "child pornography" are defined as set forth in 18 U.S.C. § 2256.  The term "computer" is defined as set forth in 18 U.S.C. § 1030(e)(1).

10.  Based upon my training and experience in the investigation of child pornography, and information relayed to me by other law enforcement officers involved in the investigation of child pornography, I know the following information about the use of computers with child pornography:

a.  <u>Computers and Child Pornography</u>.  Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized.  Child pornographers can now produce both still and moving images directly from a common video camera and can convert these images into computer-readable formats.  The use of digital technology has enabled child pornographers to electronically receive, distribute, and possess large numbers of child exploitation images and videos with other Internet users worldwide.

b.  <u>File Storage</u>.  Computer users can choose their method of storing files: either on a computer's hard drive, an external hard drive, a memory card, a USB thumb drive, a smart phone or other digital media device, etc. (i.e., "locally") or

on virtual servers accessible from any digital device with an
Internet connection (i.e., "cloud storage").  Computer users
frequently transfer files from one location to another, such as
from a phone to a computer or from cloud storage to an external
hard drive.  Computer users also often create "backup" or
duplicate copies of their files.  In this way, digital child
pornography is extremely mobile and such digital files are
easily reproduced and transported.  For example, with the click
of a button, images and videos containing child pornography can
be put onto external hard drives small enough to fit onto a
keychain.  Just as easily, these files can be copied onto
compact disks and/or stored on mobile digital devices, such as
smart phones and tablets, or printed or otherwise transferred to
a physical file.  Furthermore, even if the actual child
pornography files are stored on a "cloud," files stored in this
manner can only be accessed via a digital device.  Therefore,
viewing this child pornography would require a computer,
smartphone, tablet, or some other digital device that allows the
user to access and view files on the Internet.

      c.   <u>Internet</u>.  The term "Internet" is defined as the
worldwide network of computers -- a noncommercial, self-
governing network devoted mostly to communication and research
with hundreds of millions of users worldwide.  The Internet is
not an online service and has no real central hub.  It is a
collection of tens of thousands of computer networks, online
services, and single user components.  In order to access the
Internet, an individual computer user must use an access

provider, such as a university, employer, or commercial Internet
Service Provider ("ISP"), which operates a host computer with
direct access to the Internet.  Due to the structure of the
Internet, connections between devices on the Internet often
cross state and international borders, even when the devices
communicating with each other are in the same state.

d.  <u>Internet Service Providers</u>.  Individuals and
businesses obtain access to the Internet through ISPs.  ISPs
provide their customers with access to the Internet using
telephone or other telecommunications lines; provide Internet e-
mail accounts that allow users to communicate with other
Internet users by sending and receiving electronic messages
through the ISPs' servers; remotely store electronic files on
their customer's behalf; and may provide other services unique
to each particular ISP.  ISPs maintain records pertaining to the
individuals or businesses that have subscriber accounts with
them.  Those records often include identifying and billing
information, account access information in the form of log
files, e-mail transaction information, posting information,
account application information, and other information both in
computer data and written record format.

11.  The following are definitions of terms used herein:

i.  "Chat," as used herein, refers to any kind
of text communication over the Internet that is transmitted in
real-time from sender to receiver.  Chat messages are generally
short to enable other participants to respond quickly and in a
format that resembles an oral conversation.  This feature

distinguishes chatting from other text-based online communications such as Internet forums and email.

ii. "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

iii. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where: (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. Child pornography is sometimes abbreviated as "CP."

iv. "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other

mobile phones, and other mobile devices.  See 18 U.S.C. §
1030(e)(1).

        v.    "Encryption" is the process of converting
data into a code in order to prevent unauthorized access to the
data.

        vi.   "Log files" are records automatically
produced by computer programs to document electronic events that
occur on computers.  Computer programs can record a wide range
of events including remote access, file transfers, logon/logoff
times, and system errors.  Logs are often named based on the
types of information they contain.  For example, web logs
contain specific information about when a website was accessed
by remote computers; access logs list specific information about
when a computer was accessed from a remote location; and file
transfer logs list detailed information concerning files that
are remotely transferred.

        vii.  "Minor," as defined in 18 U.S.C. § 2256(1),
refers to any person under the age of eighteen years.

        viii.     "Records," "documents," and
"materials," as used herein, include all information recorded in
any form, visual or aural, and by any means, whether in
handmade, photographic, mechanical, electrical, electronic, or
magnetic form.

        ix.   "Sexually explicit conduct," as defined in
18 U.S.C. § 2256(2), means actual or simulated (a) sexual
intercourse, including genital-genital, oral-genital, anal-
genital, or oral-anal, whether between persons of the same or

opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person.

x.   A "storage medium" or "storage device" is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

xi.   "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## VII. STATEMENT OF PROBABLE CAUSE

16.  Based on my review of law enforcement reports, conversations with other law enforcement officers, and my own knowledge of the investigation, I am aware of the following:

**A.   Mother of MV1 Reports that MARTINEZ Enticed MV1 to Show Him MV1's Genitals**

17.  From my review of CCPD reports and conversations with CCPD Lieutenant Thompson, I am aware of the following:

a.   On July 7, 2025, the mother of seven-year-old MV1, who attends CCARP, made a report to CCPD regarding MARTINEZ's interactions with MV1. According to MV1's mother, MV1 disclosed to her that MARTINEZ, who MV1 calls "Mr. Steve," had talked to her about using a sex toy to masturbate.  MV1 also said that MARTINEZ gave her candy in exchange for hugs and

kisses and had asked to see MV1's genitals.  MV1 had shown MARTINEZ her genitals, and MARTINEZ had shown MV1 his genitals on multiple occasions at CCARP.  MV1 was able to describe MARTINEZ's genitals to her mother.

b.   CCPD Detective Wells contacted PRCS supervisor Meghan Stebbings, who identified "Mr. Steve" as MARTINEZ. MARTINEZ was employed by CCARP as a caretaker of young children from June 8, 2020, to June 26, 2025, when he was terminated for allowing a child to be unsupervised and leave CCARP unattended.

**B.   In a Forensic Interview, MV1 Reports that MARTINEZ Enticed Her to Take Photographs of Her Genitals**

18.  On July 14, 2025, MV1 participated in a forensic interview.  According to my review of CCPD reports, I know that during the forensic interview, MV1 provided the following information:

a.   MV1 met MARTINEZ at CCARP when she was five or six years old. MV1 said that MARTINEZ "pretended" to like her around January 2025, when she was a first grader.  MARTINEZ showed MV1 Barbie videos and pictures of dresses and bedrooms on his phone at first.  MV1 said that MARTINEZ pretended to "like" or "love" MV1 and said that they could be together forever.

b.   When MARTINEZ and MV1 were outside at CCARP, MARTINEZ took her to the back corner of the facility, pulled down his pants and showed her his penis.[1]

---

[1] MV1 referred to this as MARTINEZ's "private parts" and indicated towards the genital region on her own body.

c.   MV1 said that MARTINEZ asked MV1 "almost every day" to show him her genitals.  MV1 showed him on more than one occasion and was annoyed by how often he asked.

d.   MARTINEZ gave MV1 his phone to take to the bathroom and take photographs and videos of her bare breasts and her vaginal area.  MV1 stated she set the phone up in multiple spots in the bathroom, such as on the floor or on the toilet paper dispenser, in order to capture herself.  In the photos and videos, she would remove her shirt and fling it around or pull down her pants when she wasn't wearing underwear.  MV1 did not know what happened with the photos and videos, as they were on MARTINEZ's phone.

e.   MARTINEZ kissed MV1 on the cheek.  MARTINEZ asked MV1 to kiss him on the neck, which she did.  MV1 said that MARTINEZ also talked to her about "sex."

f.   MARTINEZ showed MV1 a vibrating sex toy, which MV1 drew as a cylinder with a bulbous end. She called it a "Plus Private Massager" and described it as green with a black ball on the end.  MARTINEZ told MV1 that females use the toy on their private parts, but MV1 did not want to do that, so MARTINEZ used it on her hand.

## C.   Arrest of MARTINEZ and Search of His Person, Residence, and Vehicle

19.  Based on my review of CCPD reports and my conversations with CCPD Detective Wells, I am aware of the following:

a.    On July 16, 2025, CCPD arrested MARTINEZ outside his home for California Penal Code 288(a) (lewd acts on a child).  On his person, MARTINEZ had **SUBJECT DEVICE 1**.  The lock screen of **SUBJECT DEVICE 1** displayed a picture of MV1 that showed her face, in which she was lifting her shirt and exposing her bare breasts and abdomen.

b.    Subsequently, CCPD obtained a state search warrant for MARTINEZ's residence, located at 2437 Corinth Avenue, Unit #209, Los Angeles, California; MARTINEZ's vehicle, a 2012 silver Honda Civic bearing California license plate 6RWB563; and **SUBJECT DEVICE 1**.  The search warrant was signed by the Honorable Craig Richman, Magistrate Judge for the Superior Court of California, County of Los Angeles.

c.    During the execution of the search warrant, CCPD located and seized **SUBJECT DEVICES 2-9** from MARTINEZ's bedroom, of which he has exclusive dominion and control.  MARTINEZ's bedroom was identified by his roommate, who resides in the second bedroom of the two-bedroom unit.

d.    **SUBJECT DEVICE 2**, which was located on MARTINEZ's desktop, had an image saved as the background depicting a closeup photo of an apparent prepubescent female exposing her vagina while spreading her legs apart with her hands.[2] Additionally, when **SUBJECT DEVICE 2** was located, **SUBJECT DEVICE 3** was already plugged into **SUBJECT DEVICE 2**, which caused the

---

[2] Law enforcement has captured the image of the desktop.  As of the date of this filing, law enforcement is still analyzing **SUBJECT DEVICE 2** and has not yet located the root file for the background image.

monitor to display the file explorer with thumbnails of approximately 100 images of a prepubescent female in different lewd and sexual poses exposing her vagina and breasts, labeled as the "Francesca Collection".

e.    On July 17, 2025, CCPD obtained a state search warrant for the **SUBJECT DEVICES**, signed by the Honorable Craig Richman, Magistrate Judge for the Superior Court of California, County of Los Angeles.  Pursuant to the warrant, CCPD Detective Wells and I previewed images on **SUBJECT DEVICE 3**, which included the following:

i.    A file titled "FR625," which portrays a nude prepubescent female spreading apart her legs and labia to expose her vagina, while laying on a bed.

ii.   A file titled "FR615," which portrays a closeup of a prepubescent female's vagina and anus, with the minor spreading her buttocks apart with her hands.[3]

## VIII.    <u>TRAINING & EXPERIENCE ON INDIVIDUALS WITH A SEXUAL INTEREST IN CHILDREN</u>

42.    Based on my training and experience, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who view and possess multiple images of CSAM or child pornography are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals:

---

[3] As of the date of this filing, full forensic extraction has not been completed, therefore the full file path is not yet known. The images are part of a file explorer view of **SUBJECT DEVICE 3'S** contents.

a.    Individuals who have a sexual interest in
children or images of children may receive sexual gratification,
stimulation, and satisfaction from contact with children; or
from fantasies they may have viewing children engaged in sexual
activity or in sexually suggestive poses, such as in person, in
photographs, or in other visual media, or from literature
describing such activity.  These individuals often maintain
possession of these items for long periods of time and keep
their collections in numerous places -- in digital devices in
their homes, in their cars, in their workplaces, or on their
persons.

b.    Individuals who have a sexual interest in
children or images of children also may correspond with and/or
meet others to share information and materials (including
through digital distribution via the Internet); conceal such
correspondence as they do their sexually explicit material; and
often maintain lists of names, addresses, and telephone numbers
of individuals with whom they have been in contact and who share
the same interests in child pornography.  These individuals
often maintain possession of these items for long periods of
time.

43.  Digital child pornography on a digital device is easy
to maintain for long periods of time.  Modern digital devices
often have extremely large storage capacities.  Furthermore,
cheap and readily available storage devices, such as thumb
drives, external hard drives, and compact discs make it simple
for individuals with a sexual interest in children to download

child pornography from the Internet and save it -- simply and securely -- so it can be accessed or viewed indefinitely.

44.  Furthermore, even if a person deleted any images of child pornography that may have been possessed or distributed, there is still probable cause to believe that there will be evidence of the illegal activities -- that is, the possession, receipt, and/or distribution of child pornography.  Based on my training and experience, as well as my conversations with digital forensic experts, I know that remnants of such files can be recovered months or years after they have been deleted from a computer device.  Evidence that child pornography files were downloaded and viewed can also be recovered, even after the files themselves have been deleted, using forensic tools. Because remnants of the possession, distribution, and viewing of child pornography is recoverable after long periods of time, searching the **SUBJECT DEVICES** could lead to evidence of the child exploitation offenses.

## IX.    TRAINING AND EXPERIENCE ON DIGITAL DEVICES[4]

45.  As used herein, the term "digital device" includes the **SUBJECT DEVICES**.

---

[4] As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes); peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and

*(footnote cont'd on next page)*

46.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.  Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.  Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable

---

connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c. The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d. Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

47. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it can take a substantial period of time to search a digital device for many reasons, including the following:

a. Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which

may take substantial time, particularly as to the categories of electronic evidence referenced above.

       b.  Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

   48.  Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

///

///

///

## X.  CONCLUSION

49.  For all the reasons described above, there is probable cause to believe that MARTINEZ violated Title 18, United States Code, Section 2252A(a)(5)(B) (possession of child pornography). There is also probable cause that the items to be seized described in Attachment B will be found in a search of the **SUBJECT DEVICES** described in Attachment A.

```
The magistrate judge has viewed the images described
in paragraph 19(e), above, that the affiant alleged
are lascivious and, thereafter, placed them inside a
sealed envelope and initialed across the seal.  The
affiant has taken custody of the envelope and will
maintain custody until all appeals have been
exhausted.
```

HONORABLE A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

/s/ Victoria Scott
VICTORIA SCOTT
Special Agent, Federal Bureau of
Investigation

```
Subscribed to and sworn before
me this  18th  day of July, 2025.
```

HONORABLE A. JOEL RICHLIN
United States MAGISTRATE JUDGE